## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Julius Irick Gilyard,   #256932,   ) | |
| ) | |
| ) | CIVIL ACTION NO. 3:10-1167-JFA-JRM |
| Petitioner,   ) | |
| ) | |
| ) | |
| v.   ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Cecilia Reynolds,   ) | |
| ) | |
| Respondent.   ) | |
| _____ ) | |

Petitioner, Julius Irick Gilyard ("Gilyard"), is an inmate with the South Carolina Department of Corrections serving thirty-eight (38) years imprisonment for first degree burglary with concurrent sentences of twenty-five (25) years for assault with intent to commit first degree criminal sexual conduct, and thirty (30) days for petit larceny. He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 14, 2010.  Respondent filed a return and motion for summary judgment on October 28, 2010.  Because Gilyard is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on November 1, 2010 explaining to him his responsibility to respond to the motion for summary judgment. Gilyard filed his response to the Respondent's motion on November 24, 2010.

### Background and Procedural History

On the night of August 31, 1997, a light skinned black male broke into the home of an elderly Lexington County woman and attempted to sexually assault her.  She was able to fight off the perpetrator, and he fled taking a small amount of her property with him. A fingerprint found at the

scene led investigators to Gilyard. He was arrested and tried by a jury. Gilyard was represented at trial by I.S. Leevy Johnson, Esquire. Gilyard was convicted of first degree burglary, assault with intent to commit first degree criminal sexual conduct, and petit larceny.

An Anders[1] brief was filed on Gilyard's behalf by the South Carolina Office of Appellate Defense raising the following issue:

> Did the judge err in not directing a verdict on the assault with intent to commit criminal sexual conduct charge when the state failed to produce evidence of an intent to commit a sexual battery.

Pursuant to state procedure, Gilyard filed a *pro se* brief raising the following additional issues:

1. Did the Trial Judge err in not granting appellants oral motion for mistrial on Burglary, First degree, Petty Larceny, and assault with intent to commit sexual conduct, first degree, where trial court exposed to the jury, appellant's character and prior criminal record, whereby prejudicing the appellant and preventing appellant from enjoying the right to a speedy and public trial, by an impartial jury as provided by the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment.

2. Did the Trial Judge err in Refusing to Suppress Evidence Allegedly seized as a result of illegal searches, where affidavit in support of warrant is facially invalid, where it does not establish probable cause that the appellant had committed a crime, or that evidence indicating the appellant was the culprit would be found at the premises searched on the date of the searches, where search warrants were defective under the warrant statutes. S.C. Code § 17-13-140; § 17-13-141; § 17-13-150; § 17-13-160, in violation of appellants Fourth, Fifth Amendment rights as provided by the United States Constitution.

3. Did the Trial Judge err in not granting appellants motion for directed verdict for the offense of Burglary, Petit Larceny, and assault with intent to commit criminal sexual conduct, where state failed to provide evidence that appellant was ever inside the dwelling, which is one of the elements of the offense.

---

[1] Anders v. California, 386 U.S. 738 (1967).

4.   Did the Trial Court Judge abuse his authority when blostering the credibility of the states witnesses, (Cayce Public Safety) where by violating appellant Due Process rights as guaranteed by the United States Constitution, whereby preventing the appellant from receiving a fair and impartial trial as required by law.

5.   Did the Trial Court Judge abuse his Judicial Authority when leaving the court room, while testimony was being given by witness for the State. Whereby preventing the appellant from receiving a fair and impartial trial as required by law.

6.   Did Defense Counsel failure to object to the courts conduct, and have it adequately preserved on the record for appellate review constitute ineffective assistance of counsel that is provided by U.S. Const. Amend. 6. Whereby it prejudiced the defendant, where it prevented the appellate from enjoying the right to be represented by effective assistance of counsel. Whereby protecting appellants Due Process Rights, prior to and during every proceeding at trial.

Gilyard's convictions were affirmed by the South Carolina Court of Appeals. *See* State v. Gilyard, Op.No. 2000-UP-665 (Ct.App. Filed November 1, 2000). The Remittitur was returned on November 17, 2000.

Gilyard filed an application for post-conviction relief ("PCR") on October 19, 2001. (App. 364). An evidentiary hearing was held on August 26, 2003. Gilyard was represented by Stephen R. Soltis, Jr., Esquire. (App. 404). The PCR court issued an order of dismissal on October 18, 2007. (App. 534). A motion to alter or amend the judgment was filed on Gilyard's behalf by W. Michael Duncan. (App. 541). A supplemental order of dismissal was issued on December 10, 2007. (App. 546).

A petition for writ of certiorari was filed by the South Carolina Office of Indigent Defense raising the following issues:

I.   Were the search warrants issued in this case invalid for the following two reasons: (1) because they were issued by a ministerial recorder

3

who was not authorized or qualified to do so, and (2) because the search warrant for the car was not supported by probable cause?

II.    Did trial counsel render ineffective assistance of counsel because counsel did not timely request the lesser-included offense of AHAN to which Gilyard was entitled?

III.    Was trial counsel ineffective for failing to move for a mistrial, or even object, when the State's key witness - the victim- in this case repeatedly remarked that Gilyard should take the stand in violation of Gilyard's constitutional right not to testify on his own behalf?

The petition for writ of certiorari was denied by the South Carolina Supreme Court on April 7, 2010.

The Remittitur was returned on April 23, 2010.

## Grounds for Relief

Gilyard states no grounds for relief in his petition. Instead he references a forty-one page attachment to the petition in which he states four grounds of ineffective assistance of counsel. Respondent has condensed Gilyard's grounds for relief as follows:[2]

1.    That the petitioner was deprived of effective assistance of counsel in violation of the South Carolina Constitution, and the Sixth and Fourteenth amendments to the United States Constitution, and the laws of South Carolina, and in violation of the dual office holding provision as provided by S.C. Const. Art. XVII, Sec. 1(a).

a. ... Evidence was introduced against petitioner at trial resulting from arrest and search warrants issued by City of Cayce Judicial official John C. Sharpe. Defense counsel stated prior to the suppression hearing that both his suppression motions were "weak.", However, counsel then attempted to argue that the searches were invalid for reasons as outlined in the written motions. Counsel failed to bring to the court's attention that there was no search warrant affidavit and no probable case as required by S.C. Code 17-13-140. (See attachment 12 to the federal habeas petition, ground one and supporting facts).

2.    That counsel breached the standard of care, and the Petitioner was deprived

---

[2]Gilyard does not appear to object to Respondent's statement of the grounds for relief in his Roseboro response.

4

of effective assistance of counsel as guaranteed by the South Carolina Constitution, and deprived of due process and equal protection of the law as provided by the United States Constitution and the laws of South Carolina; particularly, S.C. Code of Laws, 14-25-310; 14-25-115; S.C. Code 5-7-250(b); 5-7-260(1); and 5-7-270.

       a. Mary Joyce Marshall, a staff attorney with South Carolina Office of Court Administration testified at the August 23, 2003 PCR hearing and reported that they had no record of Mr. Sharpe's compliance with continuing education or his appointment as a ministerial recorder.... (See attachment 12 to the federal habeas petition, ground two and supporting facts).

3.     Petitioner was deprived of effective assistance of counsel as guaranteed by the United States Constitution, and the South Carolina Constitution, and further deprived of Article I, Section 14 of the South Carolina Constitution, and the laws of South Carolina, particularly, S.C. Code, Section 17-23-60 where trial counsel failed to object to the prejudicial hearsay testimony that was provided by state witness Corrie Wakefield, and State witness Lt. Darwin Fulwood, in which is barred by S.C. Rules of Evidence 801©.

       a. During trial of Petitioner's case, the State called as its first witness, Lt. Darwin Fulwood, where he provided the following testimony during direct examination:

           Q. Tell the jury what kind of call came out and where you were when you got it if you know.

           A. Okay, it was on August 31st. It was at - - Well, the time was 21 - - 2321 hours or actually 11:21 p.m. I was on the street. I wasn't very far from the scene. Dispatch give a call out as a 1073 in progress which is actually a burglary charge in progress. They give it out at 210 Spencer and so being that we knew the seriousness of the call and the way my dispatcher had actually stated on the radio we knew it was something fairly serious... No one from dispatch testified at Petitioner's trial. Trial counsel failed to object to this testimony as being hearsay. On cross-examination, trial counsel questioned Lt. Fulwood about the description of the suspect that they were looking for when they conducted their sweep of the incident location. Lt. Fulwood testified it was medium build, medium height, either a light-skinned black male, or either a Hispanic male. Lt. Fulwood later admitted that

> he wrote a supplemental report of what he did but did
> not make any mention of a light-skinned black male....
> (See attachment 12 to the federal habeas petition,
> ground three and supporting facts.)

4.     Petitioner was deprived of effective assistance of counsel as guaranteed by the South Carolina Constitution and deprived of due process and equal protection of the law as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, where trial counsel failed to move for a mistrial, or object, when the State's key witness (Ms. Corrie Wakefield) the victim in this case repeatedly remarked that Petitioner should take the stand in violation of the Petitioner's constitutional right not to testify on his own behalf.

> a. At Petitioner's trial the victim, Ms. Wakefield, repeatedly remarked
> on cross examination that the Petitioner should take the stand and
> explain himself...(See attachment 12 to the federal habeas petition,
> ground four and supporting facts)

(Res.Mem., pp. 15-17).

## Discussion

Since Gilyard filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--(1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or (2) resulted in
> a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

### A.  Ineffective Assistance of Counsel

Gilyard asserts that his trial attorney was ineffective for failing to:

1.  Argue at the suppression hearing that "there was no search warrant affidavit and no probable cause as required by S.C.Code [Ann. §] 17-13-140." (Attachment, p. 21);
2.  Argue that John Sharpe, the City of Cayce Ministerial Recorder who issued the search warrants, had no authority to issue warrants. (Attachment, p. 37);

3.  Object to hearsay testimony of two of the State's witnesses. (Attachment, p. 38); and

4.  Object to testimony by the victim that Gilyard should testify at the trial. (Attachment, p. 40).

The only one of these claims which was raised in the petition for writ of certiorari is Gilyard's

claim that trial counsel was ineffective for failing to object to the victim's testimony that Gilyard

should testify at trial.[3]  The search warrant claims were raised in the petition for writ of certiorari but not as claim of ineffective assistance of counsel.[4]

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,

---

[3]Gilyard raised two other claims of ineffective assistance of counsel in his appeals.  In the petition for writ of certiorari, Gilyard asserted that trial counsel was ineffective for failing to request the lesser included offense of assault and battery of a high and aggravated nature.  In his *pro se* brief on direct appeal, Gilyard argued that counsel was ineffective for failing to object and preserve for the record misconduct of the trial judge who allegedly left the courtroom during testimony.  Neither of these claims is raised in the present petition.

[4]Therefore, the undersigned concludes that the only claim of ineffective assistance of counsel that is properly before this Court is Gilyard's claim that counsel failed to object to the victim's statements that he should testify.  The other claims of ineffective assistance of counsel are procedurally barred and should not be considered by this Court. (*See* discussion below).

but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

* * *

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

1.   <u>Victim's Testimony</u>

The testimony about which Gilyard complains occurred during the cross-examination of the victim by his attorney. The cross-examination was difficult as the victim was argumentative. Counsel described it as "meandering." (App. 466). The following colloquy occurred:

**Question:**   We're trying to find out - - you said - - -

**Answer:**   You ain't going to find out nothing. Ask him. Put him on the stand.

**Question:**   You - - -

9

**Answer:**     You. You. Me.

**Question:**     You said - - You said - - -

**Answer:**     Let me talk to him because I ain't got nothing to say to you no more.

      \*        \*        \*

**Question:**     Your bedroom is no bigger than this area right here isn't that right?

**Answer:**     No.

**Question:**     It's not that big?

**Answer:**     Your Honor, no, it ain't.

**Question:**     Your bedroom - - -

**Answer:**     My bedroom is as big as that and big as this down here.

**Question:**     All right. And - - -

**Answer:**     Don't putting - - I ain't got nothing else - - Let him - - I ain't got nothing else to say to you.  I'm telling the truth and God - - God help me I'm telling the truth. He did it and I cross my heart to God he did it and you just - - You wait till you go home.  I ain't want to say nothing else to you no more.  I done say what I got to say.

      \*        \*        \*

**Question:**     But he never said anything about he was going to rape you.

**Answer:**     You got - - You got - - He - - Somebody seen him and he will tell what - - Who and what he would tell about...Now you got me to talk.  What he tell who he got in the car with - - He got in a car with a man and knock on my door.  Why ain't you going to tell him? Ask him.

10

(App. 158-166).

The victim initially told counsel if he wanted to find out certain information counsel could "put [Gilyard] on the stand."  Thereafter, she told counsel to ask Gilyard the answer to his questions.

During the PCR hearing, counsel testified that he did not object to this testimony and other portions of the victim's testimony as a matter of strategy. (App. 464-469).  The PCR court found that counsel "used sound strategy and has provided reasonable explanations as to why he did not object to [the victim's] testimony." (App. 538).

In Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998), *cert. denied*, 528 U.S. 855 (1999). the Court differentiated the types of decisions which must be made by criminal defense counsel.

> There are essentially two categories of decisions made by a criminal defendant's trial counsel: those decisions, deemed "personal," that must be made with the defendant's consent and those that may be made without the defendant's consent.  Decisions that may be made without the defendant's consent "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed."  The decisions that must be made with the defendant's consent include the decision to enter a guilty plea, the decision to waive a jury trial, the decision to pursue an appeal, and, as noted in Part III of this opinion, the decision to testify at trial. (Citations omitted).

Tactical decisions involving trial strategy include such matters as stipulation of a witness as an expert, lines of questioning on cross-examination, United States v. Caldwell, 201 F.3d 437 (4th Cir. 1999) (Table),  moving to suppress a confession, Sexton v. French, 163 F.3d at 885 ("The decision whether to file a ...motion to suppress a confession is a classic tactical decision.") and objecting to evidence, Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992).

When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689.  Thus, courts are instructed not to second guess an attorney's trial strategy and tactics.  Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir. 1991).

Gilyard has not shown that the state courts misapplied the Strickland test to this claim.

2.    Validity of Warrants

Gilyard asserts that counsel was ineffective for failing to challenge his arrest warrants and two search warrants.  This issue was raised and addressed during the PCR process.  In the petition for writ of certiorari, Gilyard argued that the two search warrants (one for his residence and the other for his vehicle) were invalid because the ministerial recorder for the City of Cayce who issued the search warrants was not qualified, and the search warrant for the vehicle was not supported by probable cause.[5]

The record shows that counsel made a motion to suppress (App. 645), and a suppression hearing was held (App. 83).  The motion was denied. (App. 105). Gilyard argued in his *pro se* brief on direct appeal that the trial court erred in denying the motion to suppress.

Gilyard appears to have asserted in his PCR application that the ministerial recorder who issued the search warrants was unqualified to do so. (App. 370). The ministerial recorder, John Sharpe, testified at the PCR hearing. (App. 435).  The PCR court found that the search warrants signed by Mr. Sharpe were valid as a matter of state law.  The decision was affirmed by the denial of the petition for writ of certiorari by the South Carolina Supreme Court.

_____

[5]Copies of the search warrants are attached to the Supplemental Appendix.

12

Stone v. Powell, 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) precludes a federal court from granting habeas relief on an alleged Fourth Amendment violation if "the State has provided a full and fair litigation" of the claim. Shortly after Stone was decided the Fourth Circuit stated the appropriate framework for the District Courts to employ when considering a Fourth Amendment claim in a § 2254 petition:

> "[A] district court ..., should, under Stone v. Powell, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice.
>
> * * *
>
> Second, ... when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of petitioner's case, when applying Stone v. Powell unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired."
>
> Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir.1978). *See also* Mueller v. Angelone, 181 F.3d 557, 570 n. 8 (4th Cir.1999).

While "Stone v. Powell, marked for most practical purpose, the end of federal court reconsideration of Fourth Amendment claims by way of habeas petitions where petitioner has the opportunity to litigate those claims in state court", Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir.1982), claims of ineffective assistance of counsel in litigating those claims in state court may be raised and are cognizable in the § 2254 petition. Kimmelman v. Morrison, 477 U.S. 365, 382-383, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

Insofar as Gilyard is attempting to raise these Fourth Amendment issues as "stand alone" claims, they are barred by Stone v. Powell. Gilyard's claim that his attorney was ineffective for failing to move to suppress the fruits of the search based on the lack of authority of the ministerial recorder to issue the warrants was decided against him as a matter of state law by the South Carolina

13

Courts, i.e., the courts ruled that the ministerial recorder was qualified to issue the search warrants under South Carolina law. Therefore, counsel was not ineffective for failing to raise this issue.

### 3. Hearsay Testimony

In his third ground for relief, Gilyard asserts that trial counsel was ineffective for failing to object to hearsay testimony from the victim and a police officer. As noted above, this claim was not raised in the PCR process and is procedurally barred. (*See* discussion below). The record shows that Gilyard asserted in his PCR application that trial counsel was ineffective for failure to object to hearsay testimony of the victim. (App. 371). However, neither Gilyard nor trial counsel was questioned concerning the issue at the PCR hearing. (App. 404). The issue of the victim's hearsay testimony was not specifically addressed by the PCR court. (App. 534). The issue was not raised in the motion to alter or amend the judgment. (App. 541). Finally, no issue relating to the failure to object to hearsay was raised in the petition for writ of certiorari.

**B. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

14

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)   An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)   A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his

15

conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 *et seq.* A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45. A PCR applicant is also required to state all of his grounds for relief in his application.  *See*, S. C. Code Ann. § 17-27-90.  A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal.  Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court.  If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). In Bostic v. Stevenson, 589 F.3d 160, 162-65 (4th Cir. 2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in Marlar, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e).  Therefore, for matters in which the PCR court ruled prior to Marlar (i.e., November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or

16

through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[6]  Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

2.    Procedural Bypass[7]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts,

---

[6]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[7]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

17

Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.   The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice,  the federal courts generally decline to hear the claim.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

19

of his claim, or show interference by state officials.  Murray v. Carrier; Clozza v. Murray, 913 F.3d

1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th

Cir.), cert. denied, 485 U.S. 1000 (1988).  Because a petitioner has no constitutional right to counsel

in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish

cause for procedural default of a claim by showing that PCR counsel was ineffective.  Wise v.

Williams, 982 F.2d 142, 145 (4th Cir. 1992) cert. denied, 508 U.S. 964 (1993).  A petitioner must

show reasonable diligence in pursuing his claim to establish cause.  Hoke v. Netherland, 92 F.3d

1350, 1354 n. 1 (4th Cir. 1996).  Further, the claim of cause must itself be exhausted.  Edwards v.

Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be

exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221

F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000).  Additionally, a petitioner must show

an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to

show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default.

O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997).  To prevail

under this theory, a petitioner must produce new evidence not available at trial to establish his factual

innocence.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual

innocence as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

5.     Procedure

Procedural default is an affirmative defense which is waived if not raised by

respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and

prejudice or actual innocence.  If not raised by petitioner, the court need not consider the defaulted claim.  <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The only ground of ineffective assistance of counsel properly raised to the South Carolina appellate courts is Gilyard's claim that his attorney should have objected to the victim's testimony that inferred that Gilyard should testify. Gilyard does not attempt to show cause or prejudice for failure to raise his claims in state court. (*See* <u>Roseboro</u> response, p. 10).

### Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

June 16,  2011
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).